THE STATE v. EGGLESHT.

1. **Criminal Law**: SEVERAL ACTS CONSTITUTING ONE OFFENSE.—
Whether or not certain criminal acts constitute but a single crime must
be determined from the circumstances of each particular case.

2. ———: FORMER CONVICTION. Where one at the same time and by the
same act passed to the teller of a bank four forged checks it was held
that he had been guilty of but one offense, and that a conviction for
uttering one of the checks was a bar to a conviction upon the others.

*Appeal from Scott District Court.*

WEDNESDAY, DECEMBER 8.

THE agreed statement submitted shows the following facts:
"On the 19th day of February, 1874, the grand jury of Scott
county, Iowa, returned into the District Court of said county
eight indictments, in due form of law, and each indictment
charging the defendant, T. S. Egglesht, with uttering and
publishing as true a false order with intent to defraud; and,
also, eight other indictments for forgery. The orders were
forged, and were uttered by the defendant as charged in the
indictment, with intent to defraud, as follows:

In the afternoon of February 14, 1874, defendant presented

to the Davenport National Bank, of Davenport, Iowa, a body duly incorporated, and with which T. S. Egglesht & Co. had an account, four orders or checks, described as follows:

One for $1,760.55, purporting to be drawn by H. Koehler & Lange upon the Citizens National Bank of Davenport, Iowa.

One for $1,550.51, purporting to be drawn by Krack & Wohlenberg upon the Citizens National Bank of Davenport, Iowa.

One for $830.50, purporting to be drawn by H. P. Beattie upon the First National Bank of Davenport, Iowa.

And one for $1,460.10, purporting to be drawn by Dow, Gilman & Hancock upon the First National Bank of Davenport, Iowa.

All of the foregoing described checks were drawn payable to the order of T. S. Egglesht & Co., and were indorsed by defendant by writing the name of said firm upon the back of said checks.

. Said checks, together with a deposit check for the sum of $5,601.66, (the total amount of the four checks) were placed together in one package and placed in the ordinary bank or account book, which said bank furnished defendant and other depositors of said bank, and in which credits to depositors were placed. That after being so placed in said book and the book closed, said book, in which said checks were inclosed, was handed to the teller of said bank by defendant, who took them out of said deposit book, and after examining them placed the amount of the same to the credit of said T. S. Egglesht & Co., by entering the amount thereof in said bank book.

After the credit was so given the defendant presented a check upon said Davenport National Bank for the sum of $4,500, signed by T. S. Egglesht & Co,, and received from said bank the amount thereof in currency.

. Near the same time, on the same day, at the First National Bank of Davenport, Iowa, an incorporated body, and with which T. S. Egglesht & Co. had an account, the defendant presented four checks which were exact duplicates of the four

presented to the Davenport National Bank, and above described, which, with a deposit check, he presented in the same manner as described above, by handing them in one package to the teller, inclosed in the bank book of the First National Bank, which the teller examined but refused to pass to the credit of defendant or the firm of T. S. Egglesht & Co. until inquiry was made regarding them. It was ascertained that they were forgeries, and they never were credited to defendant or said firm.

At the October term of the District Court, 1874, the defendant was put upon trial for uttering at the Davenport National Bank the check purporting to be drawn by Krack & Wohlenberg, was found guilty and sentenced to the penitentiary for the term of two and one-half years. Said case is designated upon the records of the Court as number 12,730.

After said conviction the case designated upon the docket as number 12,732 was called for trial, the indictment in said case charging defendant with uttering the check purporting to be drawn by H. Koehler & Lange, when defendant interposed a plea of former conviction, setting forth the conviction in the case numbered 12,730, and alleging that the offense upon which he was charged, tried and convicted, is the same offense as that charged in the present indictment; that the checks described in each indictment were uttered at the same time, in the same manner, in the same parcel, and under the same circumstances, at the Davenport National Bank, and that but one crime was committed thereby.

To this plea the state interposed the following demurrers:

"1st. Because the check for the uttering of which defendant had been convicted is different from that on which he now stands indicted.

2nd. Because it is shown from the record that the crime for which defendant has been convicted is a different one from the one for which he is now indicted."

The court sustained the demurrer, and the defendant was tried, found guilty, and sentenced to the penitentiary for two and one-half years.

At the same term of court defendant was put upon his trial

in cause numbered 12,725, for uttering at the First National Bank the check purporting to be drawn by Dow, Gilman & Hancock for $1,460.10, was found guilty, and sentenced to the penitentiary for the term of two and one-half years.

After the conviction last above referred to, the cause numbered 12,728 was called for trial. The indictment in that case charging the uttering of the check purporting to be drawn by H. Koehler & Lange."

To this defendant interposed a like plea of former conviction, to which a similar demurrer was sustained, and defendant was tried, convicted and sentenced to the penitentiary for two and one-half years. Defendant appeals.

*W. A. Foster*, for appellant.

But one crime is committed by uttering a number of forged checks at the same time to the same party. Each check, although purporting to be drawn by different parties, cannot be made the basis of a distinct offense. (1 Bish. C. L., § 685; *People v. Van Keuren*, 5 Parker C. R., 66; *State v. Benham*, 7 Conn., 414; *King v. Sutton*, Co. Head, Tenn., 372; *Fidlar v. State*, 7 Humph., 508; *Roberts v. State*, 14 Geo., 8; *State v. Nelson*, 29 Me., 329.)

*M. E. Cutts, Attorney General*, for the State.

The stealing of the goods of several parties at the same time constitutes as many distinct offenses as there are distinct owners of the goods stolen, and a conviction for one is no bar to a subsequent conviction for the other offenses. (*United States v. Bereman*, 5 Cranch. (C. C.), 412; *Gow v. Andrews*, 2 Mass., 408; *Regina v. Brettel*, 1 Carr & March, 609; *State v. Thurston*, 2 McMullan, 382; *Rex v. Champness*, 2 Moody & Rob., 26.)

DAY, J.—Whether certain criminal acts constitute one crime or more must depend upon the nature and circumstances of the acts themselves.

When the defendant uttered, at the Davenport National

Bank, four forged checks, the character of his·act became fixed. He either committed one crime, or he committed four. It is not competent for the state, at its election, by the form of the indictment, to give to defendant's act the quality of one crime or of four at pleasure. The act partakes wholly of the one character or wholly of the other.

We think the decided weight of reason and of authority supports the position that when defendant by one muscular action and one volition passed to the bank in question four forged checks, and procured them to be placed to his credit, he committed one crime, and not four.

Cases involving analogous principles, but none ruling the precise point involved, have been cited by the Attorney General.

In *Regina v. Brettel*, 1 Carr. & Marsh., 609, cited by appellee, it was held that where the defendant stole two pigs at one time, and was convicted and punished for stealing one, such conviction could not be pleaded in bar to a subsequent prosecution for stealing the other pig.

The same doctrine is held in other cases. See 1 Wharton's Criminal Law, section 565, note x.

But the decided weight of authority seems to be opposed to this view. See *Lorton v. State*, 7 Mo., 55; *State v. Nelson*, 29 Me., 329; *State v. Williams*, 10 Humph., 101; *State v. Morphine*, 37 Mo., 373; *Jackson v. State*, 14 Ind., 327.

In the case of *United States v. Bireman*, 5 Cranch. (C. C.), 412, also cited by appellee, it was held that stealing goods of several persons at one time constituted as many distinct offenses as there were distinct owners of the goods stolen, and that such offenses might be charged in as many distinct indictments. See also, *State v. Thurston*, 2 McMullan, 382. Directly opposed to this doctrine is *Lorton v. State*, 7 Mo., 55.

It seems impossible to maintain the doctrine of the former cases upon principle. If the stealing of various articles owned by different individuals, constitutes as many distinct offenses as there are owners, then they cannot be united as one offense in the indictment. If one should at the same

time, and as one act, steal two watches, each of the value of fifteen dollars, and owned by different persons, and another person should steal in the same manner two articles of like value owned by one person, it would be difficult to give a reason satisfactory to the legal mind why one should expiate his offense with a fine of two hundred dollars or imprisonment in the county jail for sixty days, whilst the other should be sent to the penitentiary for the period of five years?

If A. should at one. time, and as one act, hand to a merchant four counterfeit bills, each of the denomination of five dollars, and have the amount passed to his credit, and B. should in like manner pass one bill of the denomination of twenty dollars, we would much doubt whether the " perfection of human reason " would be evinced in sending B. to the penitentiary ten years for one crime, and A. forty years for four crimes.

Or, suppose that the defendant, instead of passing to the bank four checks, amounting to $5,000, and procuring credit thereon, had paid over in a similar manner the sum of $5,000 in bills, each of the denomination of five dollars, would it be claimed that he had committed one thousand criminal offenses, each of which might be punished by imprisonment for the term of ten years? Yet there can be no difference in principle between the passing of a counterfeit bank bill and the uttering of a forged check or draft. That the defendant, at each of the banks in question, committed but one offense, is well sustained by authority. See *The People v. Van Kuren*, 5 Parker C. R., 66; *State v. Benham*, 7 Conn., 414.

It is urged by the appellee that if the state had failed to prove the forgery of the check described in the first indictment tried, there would have been an acquittal, and that it is a dangerous rule to allow such acquittal to be pleaded in bar to a subsequent prosecution for uttering another check, since it would thereby be placed in the power of the defendant to secure a trial upon the indictment under which he knows no conviction can be had, and then plead the judgment of acquittal as a bar to the other indictments. But the state can and should prevent the happening of any such contingency, by

charging the uttering of all the checks offered at the same
time, in one indictment and as but one offense.    When this is
done, proof that any one of the checks was known to be a
forgery, will support the indictment.

In *The People v. Van Kuren, supra,* a party who had a
roll of counterfeit bills in his possession was indicted for
having one counterfeit bill in his possession, with intent to
utter as true, and was acquitted of the charge, and it was held
the acquittal was a bar to a prosecution on account of the
other bills.

The court erred in sustaining the demurrers to the defend-
ant's pleas.

REVERSED.

