Bbnteey, J.
(orally.)
At the January, 1890, term, to-wit: March, 1890, the plaintiff in error, Lydia Devere, was indicted jointly with one Joseph Lamb under sec. 7091 of the Revised Statutes, for the crimes therein designated as a forgery. What disposition was made of the case against Joseph Lamb does not appear from the transcript of journal entries filed with this petition in error, but it is suggested in the record of the testimony here presented, that he had been tried on the indictment and acquitted. The plaintiff in error was arraigned on the indictment April 19, 1890, and she entered a plea of “ not guilty.” She was tried upon the charges preferred in the indictment (there being two counts in it), and on May 2, 1890, a verdict of guilty was rendered against her on both counts. She thereupon filed her motion for a new trial, which was overruled, and she also filed her motion in arrest of judgment, which was also overruled, and the court sentenced her to confinement in the penitentiary for five years upon the verdict as it related to the first count, and five years upon the verdict as it related to the second count; the last term to begin when the first should terminate. And she prosecutes this petition in error to set aside the sentence and verdict.
*512 The first count in the indictment charges that the defendant (and Joseph Lamb), at the county of Lucas, on the 22d day of April, A. D. 1889, unlawfully and feloniously did falsely make, forge and counterfeit a certain promissory note for the payment of money, of which the following is a copy :
“$5,000. Cleveland, O., April 22, 1888.
“ One year after date I promise to pay to the order of Florida G, Blythe five thousand dollars, at six per cent, interest. Value received.
“Richard Brown.”
The indictment also sets forth that on the back of the note is the indorsement “Florida G. Blythe.” “With intent thereby unlawfully to to defraud * * contrary to the statute in such case made and provided,” etc.
The second count charges that the defendant and Joseph Lamb, on the 5th day of August, in the year 1889, at the county of Lucas aforesaid, unlawfully and feloniously, to the First National Bank of the city of Toledo in said county, did utter and publish as true and genuine a certain false, forged and counterfeited promissory note for the payment of money, which said false, forged and counterfeited promissory note for the payment of money is of the purport and value following, to-wit: (Then follows a copy of the note, which is like the one I have already read.) “ Said false, forged, and counterfeited promissory note for the payment of money, at the time it was so uttered and published as aforesaid, had endorsed upon the back thereof the name “Florida G. Blythe.” Said false, forged and counterfeited promissory note for the payment of money, was uttered and published as aforesaid with intent thereby unlawfully to defraud, they-the said Lydia Devere and Joseph Lamb then and there at the time they so uttered and published said false, forged and counterfeited promissory note for the payment of money, well knowing the same to be false, forged and counterfeited. Contrary to the statute, etc.”
*513 No objection to the indictment by motion or demurrer, or otherwise was taken, prior to the rendition of the verdict; but it is argued before us that the indictment is defective or improper in substance, as charging two separate and distinct felonies, one in April, 1889, and one in August, 1889, and regarding two distinct written instruments; and that objection on this ground was seasonably raised by the motion in arrest of judgment.
An inspection of the indictment shows that the note set out in the second count is identical in form with that set out in the first count. It nowhere appears, however, by direct averment in the indictment, that the two are in fact identical, or that it was not intended to describe two different instruments reading precisely alike. The Massachusetts reports contain a case of that precise character — Commonwealth v. Miller, 3 Cush. 243, — where there were at least three notes precisely identical in form, but which were in fact distinct instruments. In a case which arose in California, where the indictment was in substance in such form, the court among other things held this:
“ If an indictment for forgery contains two counts, in each of which a copy of the instrument alleged to have been forged is set out, and the copies are alike, it will not be presumed that each is a copy of only one and the same original instrument, without an allegation to that effect in the second count.”
A like ruling has been made in Montana Territory v. Pouler, 19 Pac. R. 594. But in the California case referred to it is also held :
If there is more than one offense charged in the indictment, the defect should be taken advantage of by demurrer. If the objection be not taken by demurrer, it cannot be considered on motion in arrest of judgment.”
This is the general doctrine, as established by the authorities. I will refer on this matter to Carper v. State, 27 Ohio St. 572; Bartlett v. State, 28 Ohio St. 571 ; Kerr v. State, 36 Ohio St. 623.
*514 Our statute, sec. 7353, provides this :
“ A motion in arrest of judgment may be granted by the court for either of the following causes :
“ 1- That the grand jury which found the indictment, had no legal authority to inquire into the offense charged, by reason of such offense not being within the jurisdiction of the court.
“ 2. That the facts stated'in the indictment do not constitute on offense.”
The statute also provides as to what questions may be raised upon motion to quash, what upon a demurrer, what upon a plea in abatement; and sec. 7253 has this provision :
“ The accused shall be taken to have waived all defects which may be excepted to by a motion to quash or a plea in abatement, by demurring to an indictment, or pleading in bar or tbe general issue.”
In the California case there was nothing in the record outside the averments of the indictment to show whether or not more than one instrument was or was intended to be therein described; and the court, in considering the action of the trial court, used this language:
“ If the defendant was proved to be guilty of both offenses charged, he cannot justly complain of the judgment. If he was proved to be guilty of only one of them, it must be presumed the judge who tried the case pronounced judgment against him as upon a verdict for the offense to which the evidence was directed and was properly applicable.”
In the case before us the record contains all the testimony, and it clearly appears therefrom that the note set out in the first count of the indictment, and that set out in the second count, are one and the same. In his charge to'the jury the learned judge who presided at the trial, said :
“ The defendant Lydia Devere is charged in the first count of the indictment with forging a promissory note with intent to defraud, and in the second count of the indictment with *515 uttering and publishing the same promissory note as true and genuine, knowing it to be forged with intent to defraud.”
So that when the objection was first presented, the trial court had, as the record discloses to us, legal information which dispelled any uncertainty there might have been from the mere terms of the indictment as to the identity of the instrument mentioned in the two counts, and upon which, at that stage of the trial, we think it might properly act, in disposing of such an objection.
Some further observations as to the offenses charged in the two counts will be made hereafter in another connection.
The exceptions noted during the trial to the rulings of the trial court in receiving testimony offered by the state and in rejecting testimony offered by the defendant, have each been separately considered, but may be disposed of in groups or classes.
Sundry objections were made to the introduction of evidence by the state concerning certain notes and other papers, on the ground, among others, that the papers themselves were not produced. We find no instance in the record where such evidence was received over objection, unless it appeared that such paper was presumaM}1- in the possession of the defendant, and that she had had due prior notice to produce it. And that objection on this ground, under such circumstances, is untenable, we think fairly appears from several of the cases cited by counsel for plaintiff in error, and from the authorities generally. Documents in the possession or under the control of the defendant, where he or she fails on notice to produce them, can scarcely be said to be accessible to the prosecution, or within the jurisdiction of the court, in such sense that the court might •order their production. See under this head, State v. Sanders, 68 Ia. 370; Reed v. The State, 15 Ohio, 217; State v. Coe, 19 Wis. 142.
Objection to this testimony on other grounds will be noticed further on.
*516 It is claimed that the court erred in rejecting and excluding the testimony of the witnesses Fanning, Franklin and Willin. The state had produced the said Joseph Lamb as a witness, who had testified that the defendant claimed to him that her name was Florida G. Blythe; that she formerly lived in Cleveland, Ohio, and owned the Argyle Block and other property there; and that she had certain dealings with Richard Brown, of Youngstown, who also did business in Cleveland, and was a member of the firm of Cleveland, Brown & Co., and that he had given her his signature on certain blank promissory notes, which she produced before Lamb, and had authorized her to fill up the body of the notes so as to make them the promissory notes of Brown ; and that he, Lamb, had, at her request, and in her presence, filled up the notes; and that one of the notes thus prepared was the note set forth in the indictment. That upon its being thus filled up the defendant took it, wrote on the back of it the name Florida G. Blythe, and gave it to Lamb to negotiate, which at her request he did, paying her the proceeds. The state had also called Florida G. Blythe, of Cleveland, Ohio, who testified that she had owned the Argyle Block in Cleveland, and had not indorsed the note in question, nor had the same been indorsed by her direction. The state had also called Richard Brown, of Youngstown and Cleveland, who testified that he was a member of the firm of Cleveland, Brown & Co.,'and that he knew nothing of the defendant, had never had any dealings with her, never saw her till after her arrest; had never given her the blank forms for notes to be filled out, nor entrusted her with his name in any way; and that the signatures upon the notes in question were not his. The state had also given other evidence as to the defendant’s connection with the notes and their negotiation ; that Lamb when he negotiated them and afterwards stated that they belonged to a woman who lived in Cleveland, and that he was doing business regarding them for that woman — and other statements made at the time and after-wards indicating a claim on his part that the person involved *517 was a woman who then resided in Cleveland. Thereupon the defendant by her counsel offered the testimony of the above named witnesses to show that Lamb at various times during the year 1889 had met at the house of the defendant in Toledo another woman, who said she came from Cleveland, and with whom in the parlor of defendant’s home he would spend some time alone, and then would leave, and soon after the woman would leave; and that when this woman came from time to time, a messenger boy would be dispatched for Lamb, and he would thereupon come to defendant’s house and meet this woman. Counsel stated that from these facts, if allowed to prove them, they should claim that the woman Lamb referred to in negotiating the note and afterwards, was this woman which he thus met. It is not claimed by counsel for the defendant that proof was made or would be made that this was in fact or actually Florida G. Blythe, Cleveland, who was called by the state and had appeared before the jury. It was claimed by them that this woman resembled her in many particulars, except that of age ; but one of the witnesses failed to identify this Florida G. Blythe, then in the court room, with the woman that she had thus seen at the defendant’s house when Lamb was there.
Was the evidence properly excluded by the court?
The general rule is that evidence must be confined to the issue, and that the inquiry into facts entirely collateral, and leading to a controversy .over matters altogether foreign to the case before the court, cannot be permitted. In the application of the rule the Supreme Court Commission in Hinkle v. McClure, 32 Ohio St. 202, where the plaintiff claimed to have traded a horse for a wagon with one Hinkle, who was to pay him boot money, and Hinkle defended, claiming that the trade was with one Hedges and not himself, and was permitted to prove that the estate of McClure was indebted to Hedges, and that the trade was made to effect a set-off between Hedges and the estate, and this was given in order to raise a presumption in favor of the sale to Hedges, held that evidence of *518 such an indebtedness was not admissible. In the Supreme Court of the United States, in the case of Xenia Bank v. Stewart, 114 U. S. 224, it was held that on an issue whether a deceased party had furnished money to pay a note, it is not allowable to attempt to show that for more than a year previous he had been hopelessly insolvent, and had experienced great difficulty in procuring means to meet his obligations. The court say : “ The evidence offered was inaomissible because too remote, and conjectural. The law requires that an open and visible connection between the principal and evidentiary facts and the deductions from them must appear, and docs not permit a decision to be made on remote inferences ” ; citing several cases in that opinion which will be found instructive upon this point. In 47 N. Y. 186, Baerd v. Gillet, in an action against a physician for neglect and malpractice, it was held that the admission of proof that defendant had not presented any bill or asked any pay for his services was error. The court say : “The question whether the defendant had presented any bill, or asked for any pay for his services, was entirely foreign to the issue, and therefore objectionable. It did not legitimately prove, or tend to prove, want of skill or care in treatment; but the fact might, in an action-for malpractice, in a doubtful case, be urged with great force as in the nature of an admission of neglect or want of skill. It makes a collateral issue upon which the defendant is called to give explanatory or contradictory evidence, and by which the jury may be embarrassed ” ; and that court held that the evidence was improper.
Other cases bearing upon the same point have been examined by. us; among them 56 N. Y. 334; 4 Wall. 463; 76 Ala. 328; 55 Mich. 308, 5 Gray, 422; Com. B. Rep., N. S. vol. 4, 388; 1 Peake, 94. The case of Dyer v. Isham, Circuit Court of Hamilton County, 4 C. C. R. 429, cited by defendant, we have examined, and though having the highest regard for the opinions of the court delivering this opinion, we are unable to give our assent to the conclusions arrived at in that case on the point we are now considering. The ease of Tomkins v. Starr, *519 41 Ohio St. in this connection and in another, is also urged on our attention, and Allison v. Horning, 22 O. St. It is to be remarked that in 41 Ohio St., the question being upon whether a contract to provide for a certain person for a certain limited time, dependent upon a contingency, or whether it was for life — one party claiming that the contract had been for the life of the person, and the other that it was limited to the time that they should agree. — evidence was permitted tending to show that at the time this contract was made, this person, who was to be' thus provided for life, was of a nervous and peevish and morose disposition, in order to bear upon the probabilities of the case, whether or not the other party would be likely to make an unlimited contract to provide for living with such a person during her life — and that that party had knowledge at the time, of course, of this peevish disposition of the person. In 22 Ohio St., where it was permitted to show what the usual price of a certain kind of labor was, there was a conflict between the parties as to the price that should be paid for certain labor— laying or dressing stone, I think. One party claimed that the price agreed upon was a certain amount; the other party claimed that the price agreed upon was a much less amount. They testified about these different claims; and in such case it was permitted to introduce evidence tending to show the fair value of such labor, as bearing upon the probability whether the plaintiff or the defendant was right in his claim as to what the contract was. It will be observed that in both of these cases the testimony was not regarding circumstances afterwards occurring, or occurring a long time previous, but the surrounding circumstances at the very time when the contract was entered into. And the court disposes of the cases upon the absolute authority of decisions in some of the other states.
We are of the opinion that the great weight of authority is in favor of the position taken by the court of common pleas, and that the court did not err in excluding the evidence. Let us examine the matter a moment. The issue was, whether the *520 defendant forged this paper. Lamb had testified to filling it out at her direction, and her endorsement of it by the name of Florida G. Blythe; and evidence had been given tending to show that that signature was a forgery, and that the name of Brown had also been forged to the paper. To meet the defendant’s alleged agency in the transaction, the defendant puts a witness upon the stand and proposes to prove that Lamb, after the time of that transaction, met at the house of defend.aut from time to time a woman small in size, about 25 or 26 years of age, somewhat resembling the witness Florida G. Blythe, and that he usually spent an hour or two in the house with the woman, and then he would leave and she would leave, and that the woman said she was from Cleveland. Her statement that she was from Cleveland is clearly hearsay. The counsel do not prove, or propose to prove, that a particle of business of any kind or nature was transacted between those parties. They do not propose to produce the woman herself, or to show who she was, although they claim she was a frequent visitor at defendant’s house. All there is, is that he simply met her there for some undisclosed purpose. How can that evidence tend to rebut the statement of Lamb that he received the note from the defendant, and that she in his presence endorsed the name of Florida G. Blythe upon it, claiming that she was Florida G. Blythe, of Cleveland. Lamb had been asked upon cross-examination if he had not met such a woman at defendant’s a number of times, and he denied it. It is said this evidence may be given to impeach him; but unless the testimon3r that she met him was relevant to prove that the defendant did not give Lamb the'paper or endorse it, it is not competent to impeach him upon that statement. The party asking the question of the witness will be bound by his answer. The jury were to be asked upon that evidence to assume that this woman was the one from whom Lamb received the note, or may have received it. How far does the fact that he met her go to prove that she gave him the‘paper? It proves that they met, and no more. It is always competent, to cross-examine a witness *521 upon statements that he had made out of court which conflict with the statements which he makes upon the witness' stand. This has been allowed in the case of the witness La'mb. He had been asked upon cross-examination whether or not he had made statements at other times, prior to his being a witness, out of court, different from those that he now made, regarding the person from whom he had obtained this note at the time he negotiated it and afterwards. He had said, as it was shown, that he had obtained this note from one who, at or about the time this defendant was arrested, actually resided in Cleveland, and was then there; and some propositions to go with certain other witnesses to Cleveland, and to meet her, were shown. So that the defendant had the advantage of the contradiction, whatever it might amount to; that Lamb had made various statements out of court which conflicted with the statements which he now made in court, regarding the manner in which he obtained possession of the note, or at least the person from whom he had received it. Now, to prove the other matters — that is, to corroborate his statement which he made out of court that he had received it from another person than the one he had testified in court that he had actually received it from, it was necessary to prove something that would tend to show the fact itself; that is, that instead of receiving it from the defendant, as he testified in court, he had actually received it, or probably received it, from some other person. This is the effect that is claimed for this testimony which was offered. It simply amounts, then, to this, in addition to the contradiction of Lamb that he had met this woman, that he had had an opportunity of obtaining this note or anything else from a woman other than the defendant; and perhaps that he had this opportunity at the defendant’s house, where he says he obtained the note in question. But does it legitimately prove, or tend to prove, that the statement which he made that he received it from the defendant, was probably false ? The mere fact that he had an opportunity to receive it from somebody else, we think would not be properly admissible, because testi *522 mony might be multiplied indefinitely as to his opportunities of receiving it. There must have been connected with this testimony, or with th<i offer to prove, some circumstance that would bear upon the reception of this note at the hands of this other woman claiming to have come from Cleveland. For all that appears in the testimony, so far as it was given by this witness, and so far as it would appear from the offer to prove made by the counsel, the meeting of Lamb with this woman was for another purpose, and there was nothing in it which, we think, tends to prove the main fact, that lie did in fact receive the note from the other woman, or that he probably did so. So, although counsel have contended most earnestly that the evidence should have been received, we are unable to agree with them. Wo think it was clearly irrelevant to the issue being tried.
Testimony was also offered in the case, after the state had produced evidence tending to show that as the result of this forgery, and the uttering of this and other notes during the same season,the defendant had received a large sum of money, perhaps $15,000 ; that subsequent to the time when the evidence of the state tended to prove that she had received this money, or a portion of it, she was in indigent circumstances; that her property, so far as she had any, was under' chattel mortgage; that she was paying high rates of interest, and, in fact, that she was financially distressed. This evidence was rejected, and error is predicated upon that ruling of the court. We are unable to see, however, that the court should have admitted this class of testimony. It was regarding acts of the defendant herself, subsequent to the time when it is claimed that these crimes were committed ; and as to what show she ■would make of the money would depend upon her own will. Wnethér the money she received, if she did receive it as claimed by the state, would be used to pay off this mortgage indebtedness, or to relieve her from other financial embarrassments, would be simply a matter of conjecture, and it would be wholly in her power to determine what evidence should be *523 made in the matter. We have examined several eases bearing «pon this subject, and we are unable to find that in any case that sort of testimony is held admissible. In the case already adverted to, in 114 U. S. it was held that testimony of financial embarrassment, even before the transaction in question, was not properly admissible; and we think much more clearly would testimony as to the financial condition after the supposed occurrence be inadmissible.
Objection is also taken to the rejection by the trial court oí the testimony of the witness Barager offered by the defendant. Richard Brown had testified that he not only had not seen this note in question or authorized it to be signed, but he had testified that he had never seen this defendant prior to her arrest; never had anything to do with her in any manner or form whatever; never furnished her his signature for any purpose; and, in fact, that the two were entire strangers at the time of these transactions, blow a witness was offered by the defendant to show in contradiction of Brown’s testimony in this regard that an elderly gentleman, and very white, as the witness expressed it, and calm, once appeared prior to any of these transactions, at the house where the defendant had lately before lived, and inquired for her, and that this man thus seen bore some resemblance to Mr. Brown, as was claimed. This was for the purpose, I say, of contradicting Brown, and to show that instead of the parties being entire strangers to each other, Mr. Brown, prior to this transaction, apparently had known the defendant, and had called upon her for some purpose at her residence. It is to be noticed that Mr. Brown had been a witness in court, and prior to this offer. "Whether he was then present in court does not appear by the record. The offer was not made to prove that the witness knew Mr. Brown, and had identified him as being the person he saw, but simply that a person that counsel claimed somewhat answered his description, had been seen at the defendant’s house by the witness. The offer to prove,'taken in connection with what the record shows had transpired in the *524 case in the presence of Brown, and the statement of the witness, so far as he was allowed to make any statement, raises the query whether or not it was intended to be an offer by counsel to identify Brown by the witness, or to really adduce proof from which the jury would have had any right to infer that the man thus calling was in fact Brown. But the majority of us, at least, arc inclined to the opinion that under the circumstances of the case, and the offer of counsel, it would have been entirely proper for the trial court to have allowed this testimony to be given to the jury. But the question is., ■whether it was of such a nature that it would warrant any action on our part in disturbing a verdict based upon any error of the court of common pleas regarding its admission. That was the only testimony of the kind either given or offered. Now, suppose it had been received. Mr. Brown had been before the jury, and had testified; had been seen both by the court and the jury. Suppose the witness had testified as broadly as counsel offered to prove by him, that a man, an elderly gentleman, very white in apperance, of a calm demean- or, had called and inquired for the defendant at that place at that time, would the jury have been at all warranted in basing any finding of fact that the person thus calling was in fact Mr. Brown, and to have used it to overthrow the testimony of Brown that he was not in fact there, and had no connection or acquaintance with the defendant, and had never in fact authorized this signature? We are unable to see how the jury would be at all justified in using that evidence if it had been given as broadly as it was offered, for the purpose of even raising a reasonable doubt as to the point that it was supposed'to bear upon ; and -while, as 1 say, a majority of us think it would have been perfectly proper to have admitted it, yet we are all agreed that the error, if any, committed by the court in rejecting it, was not so prejudicial to the defendant that the verdict should in any wise be disturbed on account of that ruling.
*525 In addition to the objection that was made that certain notes and documents and papers were testified of, although not produced to the jury, it was claimed that these documents were not competent or relevant, and should not have been received any way. One of the notes, the evidence regarding which tended to show was a forgery — a $2,000 note — had been given by the defendant to Mr. Lamb prior to any trans- actions charged in this indictment. That was a note purporting to be signed by Mr. Brown. Lamb attempted to negotiate it by certain correspondence, which he had regarding it. Doubt was cast upon its legitimacy, and he returned it to the madame. That was the last he saw of it. It was in testimony also that at the time this note specified in the indictment was made out by Mr. Lamb, and endorsed, other notes were also made out in a similar manner, and either then or at a subsequent time given to him to negotiate, at the instance, and for the benefit of the defendant. Borne of these notes were given in evideuce, and the testimony tended to show that some of them had been sent away or taken up, and they were not before the court. We think, however, upon the authorities, that it was competent for the state to introduce testimony as to the possession of other notes, which ivere shown to be forged and in the possession of the defendant, and her dealings with them, at least about the time of the transaction in question, and whether this occurred before or after the particular transaction specified in the indictment. We think the authorities are quite uniform in this regard. In fact, it is, perhaps, not seriously questioned by counsel for the defendant, that evidence of a transaction regarding other notes shown to be forged, had with the defendant at about the time of the transaction in question, is admissible. But it is claimed that some of these transactions were too remote in time, and ivere not sufficiently connected with the transaction in question to warrant evidence regarding it. In the first volume of Greenleaf on Evidence this general statement is made and many authorities cited to support it.
*526 “ So in an indictment for knowingly uttering a forged document, or a counterfeit bank-note, proof of the possession, or of the prior or subsequent utterance of other false documents or notes, though of a different description, is admitted, as material to the question of guilty knowledge or intent.”
As to the time when these other transactions should have occurred, whether they were near or about the time of the particular transaction in question or not, the authorities are not definite. Some of the cases that we have examined were where several months intervened between the transaction in question and the transaction with the other note and document which was also claimed to be forged. This transaction regarding the $2000 note was in the latter part of March, 1889. We are unable to see that a transaction in the latter part of March, regarding this $2,000 note, is too remote in time to bear upon the questiou of a transaction on the 22nd of April of the same year, or even of the 5th of August of the same year. Similar transactions during the summer with other notes are also shown, and transactions even much later than the last time specified in the indictment are shown — transactions as late, perhaps, as November, 1889. That these subsequent transactions were too remote in time, too far removed from the time of the last transaction in question, we would be unable, from the authorities, to say.
But in addition to this, and as removing all doubts upon the question, this is to be remarked : The evidence upon the part of the state tended to show that there was quite a close connection, in fact, between all of the transactions that were thus given in evidence; that as early as the spring of 1889 the defendant and Joseph Lamb began certain transactions regarding the notes of this man Brown; as early as the spring of 1889 this defendant claimed to be Florence G. Blythe, formerly residing in Cleveland, and the owner of the Argyle Block there, and some other property. If the testimony of Lamb is to be believed, she, as early as that timq, claimed to him that she had sold her interest in this Argyle *527 Block, and that she was to receive therefor a large sum of money. At about the same time, and connected with the matter of raising money for her, she also claimed that she had received from Mr. Brown the right to use three promissory notes of his, for the amount of $5000 each, in the settlement of a certain transaction regarding a child of her sister by him; that he had authorized her to use three promissory notes of $5000 — had furnished her his signature to that effect, and that afterwards, in some further dealing and settlement regarding the same matter, this amount had increased so that the whole sum was $40,000, which she had a right to receive from him, and represented by a note which she claimed bore his signature. In April these notes, one of which is specified in the indictment, seem to have been made. There was evidence tending to show that it was made about the time it bore date —the 22nd of April — and it was negotiated at a bank here in Toledo by Lamb, at her request, at her instance, and for her benefit; and at the time, instead of selling the note outright, Mr. Lamb gave his own note to the bank as trustee, as it is stated, and deposited this note in question as collateral security for his note, which was due in three months, and from time to time these notes that he had given in evidence, thus secured by this collateral, were renewed by him to her knowledge; and as they became due from time to time something had to be done in order to tide over the emergency and renew the note. There is some discrepancy in the testimony of Lamb and the bank officers as to whether this particular note specified in the indictment was negotiated in May, or in August perhaps, but there was evidence tending to show that it was negotiated in August, and also evidence tending to show that it was negotiated not in August, but in May, and also that other notes of a similar kind ■were negotiated in a similar way by Mr. Lamb in the intervening time. These transactions, as I say, seem to have been connected; and on the 8th of November, finally, some of these notes which Mr. Lamb had given to the bank, were to fall due. *528 She had represented to Mr. Lamb, according to.his testimony, that she had notes that would fall due about the 8th of November, so that those notes which he had given to the bank might be lifted with the proceeds of those notes which she claimed to have, arising from the sale of this property which I have mentioned. She knew from time to time, according to the testimony of Lamb, that these notes of his were to fall due, and that she felt herself under obligation to assist him in meeting them. And the transactions during the summer, and as late as November, and even into January of 1890, seem to us to be so connected together, and that the defendant is so connected with them, that there is an additional reason why they might be admitted in evidence. Indeed, it is said upon a kindred subject, in 109 Mass. 457 : “ Other frauds are admissible to prove motive and intent only where there is evidence that the two are parts of one scheme, or plan of fraud committed in pursuance of a common purpose.” Other authorities do not go to that length, but this record gives it additional force when it can be said that the transactions, other than the one in question, are in fact connected with that by the testimony. So we think upon the whole, that testimony regarding those transactions was properly received.
There is another class of testimony, however, that was received and objected to — testimony given by certain witnesses as to a transaction in November of 1889, with the defendant, at Oak Harbor; that she appeared there and claimed to the witness that she was Florida G. Blythe; had a power of attorney from her to Joseph Lamb drawn up, which she signed and acknowledged; and that she also had prepared there a certain $57,000 note, and another note for $20,000 or $25,000. The $57,000 note was not given in evidence; nor were the $20,000 or the $25,000 note, nor the particular power of attorney which was there drawn up. It seems to us that this comes under the rule to which I have already alluded. Those papers were given into the possession of the defendant, and she had notice to produce them. If they would *529 be relevant if actually produced, testimony regarding them would also be relevant. It is objected, however, that there is no testimony tending to show that these particular notes were forged, and that it is only notes that are shown to be forged, that are thus received in evidence. We think the counsel mistake the purpose of the evidence or the effect that is claimed for it. As I understand, it is not intended by that evidence to show transactions as to other forged paper, but the evidence was offered to corroborate the statements of witnesses upon the part of the state as to other matters that had already been given in evidence, and to give the whole transaction. It was shown that about this time there was a $57,000 note given by the defendant to Mr. Lamb, and by him exhibited to certain parties. It afterwards got back to the defendant, and she disposed of it, and made certain explanations as to what she had done with it, anyway. At one time it had been handed to one of the officers of one of the banks in question. The evidence, it seems to us, is receivable for this purpose: to show that shortly after 'the transactions in question this defendant was still claiming to impersonate and be Florida G. Blythe, of Cleveland; that she at that time was claiming to have some business relations with Mr. Lamb; that she wished a power of attorney to transact business of a somewhat similar nature that had already been shown to have been transacted by Lamb for her; that afterwards she produced a-power of attorney to Joseph Lamb — not the one that was prepared at Oak Harbor, but a power of attorney to him — to do business for her, which she had filled out at her instance and request, and dated back to January, 1889. There is also in this testimony a corroboration of the testimony bearing upon this idea, that she recognized some obligation on her part to provide for the notes, which, according to the various witnesses, had in fact been negotiated by Mr. Lamb at these banks, and one of these notes in question being the note specified in the indictment; that she had some connection with that negotiation; and this evidence bore upon *530 her admission of that fact. It was the theory of the defendant that in fact she had no connection with this note; that this note had been negotiated by Joseph Lamb; that if he .didn’t forge it himself, he had received it from a party other than ' the defendant, and that the defendant had no connection or relation with it in any way whatever. But this testimony that is objected to, in addition to the fact that it bore upon the general connection of the whole scheme that is outlined by the evidence, involves an admission on her part, to some extent, that she did in fact recognize some liability upon her part to provide for these notes that Lamb had thus negotiated at the bank, including the note in question.
Without specifying more particularly the particular reasons, we will say as to the draft Exhibit 10, a copy of which is attached to the record, we think that there was no error committed by the court in the reception of that draft.
Owing to the peculiarity of the testimony bearing upon the first count of the indictment, it is alleged by the defendant’s counsel that the verdict as to the first count of the indictment is not sustained by the evidence ; that there is no proof sufficient to show that the defendant forged that note, or that she forged it in Lucas county; and that the testimony bearing upon that subject is of the most dangerous character, and weak in its probative force — the testimony of accomplices, etc., and testimony of persons by their situation interested to color their testimony adversely to the defendant. But we are unable to find from the evidence that the jury were not at all warranted in finding that she was chargeable with the actual forgery of this note, or in finding that it was done in fact in Lucas county. The signature was already upon it at the time it first appears in the testimony, when it was presented to Mr. Lamb for the purpose of being filled out. It was not then a promissory note; but after the writing at her instance and request, in her presence, had been done, making it a promissory note by filling up the blanks over the signature of Mr. Brown, the forgery of the note *531 might be said to have been then and there committed, the same as if the signature itself had been put there at that time and place.
It is also said by counsel for defendant that she could not be convicted under the second count of the indictment for uttering this note, and Brown v. The State, 18 Ohio St. 508; Chidester v. The State, 25 Ohio St. 438, and certain English reports, are cited in support of that position. At the time that the cases in the 18th Ohio St. and 25th Ohio St. were decided, the section of the statute bearing upon the subject was different in form from the provisions that existed at the time of the transaction in question here. Section 6804 now reads as it did not then: “ Whoever, aids, abets, or procures another to commit any offense, may be prosecuted and punished as if he were the principle offender.” Since the other decisions were made, the Supreme Court in Hanoff v. The State, 37 Ohio St. 178, have construed this section, and have given particular emphasis to the word “prosecuted ” as appearing therein; so that it is now held, by the provisions of this section, that the indictment may charge an aider and abettor as if he were the principal offender, the word “ prosecute” being broad enough to have reference to the form of the indictment itself. So that whatever objection might have been taken in this line prior to the amendment of sec. 6804 is no longer tenable.
The requests of the defendant to the court to charge certain propositions to the jury were all refused in form, and it has become necessary for that purpose as well as others, of course, for us to examine the charge of the court, although no exception to the charge as given was noted at the time. And reading carefully this charge, and having in view the testimony and situation of the case as it was given to the jury, we think the charge was unexceptionable; and all of the requests, and all of the propositions involved in the requests proffered by the counsel for the defendant were substantially and sufficiently given in the charge itself, so far as those requests were themselves proper. The charge of the court seems to have been *532 carefully guarded along all of the line of propositions to which the attention of the court was called by these requests of counsel.
The next objection is that-there was misconduct of two jurors. Testimony was given upon motion for a new trial that one of the jurors had expressed an opinion regarding and bearing upon the guilt of the defendant prior to his being impanelled as a juror. The affidavit of one person was made that he made such statement; the juror denies it. This matter being called to the attention of the court of common pleas, that court saw fit not to sustain the motion on this ground; and upon familiar principles, we do not feel warranted in saying that under those circumstances the court of common pleas manifestly erred in finding that in fact the juror had not so misconducted himself before or during the trial, or when he was impaneled.
With regard to the alleged statement of a juror after the trial was had that there was a letter in the jury room which the jury considered, and which was not given to the court, we think the court of common pleas was acting in the line of propriety at the time it acted upon the motion for a new trial based upon this matter. Of course, it cannot be said that a juror after the rendition of a verdict can go out of court and by any statement that he might make, invalidate the verdict which he has just given, by admitting that some improper thing happened in the jury room. And the statement of the affidavit itself was not that the juror said that the paper in question had never been before the court previously; but the statement in the affidavit is that that was the fact — at least, it would bear that construction. However that may be, we think the court of common pleas did not err in refusing to disturb the verdict on this ground.
We come now, however, to another objection that is made, and that is, that as a matter of law and of fact, there is really but one offense charged in the indictment: “The jury by their verdict find and say that defendant, Lydia Devere, is *533 guilty under each count of the indictment.” The court thereupon sentenced the defendant to confinement and imprisonment in the penitentiary, and there to be kept at hard labor for the period of five years under each count of the indictment; the last term of imprisonment to begin when the first term shall expire. Aecoi’ding to the form of the vex’dict, the plaintiff in error therefore has been convicted of two distinct independent offenses; one for falsely making, and the other for fx’auduleutly uttering the instrument set out ixx the indictment ; and she has been sentenced to two distinct terms of imprisonment — one term for each supposed offense. The rec-ox'd thex'efore presents this question : Where the same person falsely makes and fraudulently utters the same instruxneut, is he guilty of two offenses, or of one? It will be observed that this question does not touch the legality of the conviction in the px’esent case, bixt the validity of the judgment or sentence pronounced. Upon this aspect of the case the Supreme Court of California, in the case alx’eady referred to, uses this language:
“The 73d section of the act concerning crimes and punishments (Laws 150, p. 273) declares the foi’ging or counterfeiting of a check for the payment of xnoney by any pex-son with intent to damage or defraud any person or persons, to constitute the crime of forgery. The same section also declares the uttering, publishing, passing, or attempting to pass as true and genuine a fox’ged or counterfeit check by any person, knowing the same to be fox’ged or counterfeited, with intent to prejudice, damage or defraud any pei’son or persons, to constitute the crime of forgery also, and that the offender, upon the conviction of the crime, shall be p.unished by imprisonment in the state prison for a term not less than one nor more than fourteen years. The defendant is accused by the indictment of having committed each of these distinct cx’iminal acts, without showing that the cheek described in the first was the same as that described in the second count. Bixt it would seem upon reading the second count of the indictment that the check *534 which it is alleged that the defendant attempted to pass and did pass, was a different check from the one described in the first count, for it is distinguished as the “last mentioned ” check. It is not possible, from the face of the indictment, to say that the same check was intended to be described in both counts; and though the copies are alike, vevbatim et literatim,, it is not to be presumed that each is a copy of only one and the same original instrument. If it appeared from the indictment that the check described in the second count was the same as that described in the first, the objection that several offenses were charged in the indictment could not be maintained; for if the same person be guilty of making a forged or counterfeit check, and also of attempting to pass it (which involves the attempt), as true or genuine, with the intent to damage or defraud another, he might be indicted and tided for all these connected and .consecutive acts as constituting one transaction, or he might be indicted and convicted for each distinct crime of which he might be proved to be guilty. The doctrine on this snbjeet is laid down in Wharton’s Criminal Law (141) as follows : “Where a statute makes two or moré distinct acts, connected with the same transaction, indictable, each one of which may be considered as representing a stage in the same offense, it has in many cases been ruled, that they may be coupled in one count. Thus setting up a gaming table, it has been said, may be am entire offense; keeping a gamingtable and inducing others to bet upon it, may also constitute a distinct offense ; for either, unconnected with the other, an indictment will lie. Yet, when both are perpetrated by the same person, at the same time; they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted.” (Com. v. Eaton, 15 Pick. 273; Com. v. Tuck, 20 Pick. 360; Com. v. Hope, 22 Pick. 1; State v. Johnson, 3 Hill’s S. Car. 1; Buck v. State, 2 Harr. & John. 426; State v. Coleman, 5 Porter, 40; Hinckley v. Com., 4 Dana. 513.)
The doctrine above expressed appears to be supported by the authorities cited by the court in its support.
*535 It will be noticed that the statute of California; in its definition of the crime of forgery, is about identical with our own. Under both statutes the falsely making or the fraudulently uttering constitute forgery. Under this rule, the falsely making and the fraudulently uttering of the same instrument by the same person, constitutes but one offense, and subjects the offender to but one penalty.
After a careful and laborious examination of the authorities we have been unable to find anything militating against this doctrine; and the general tenor of the authorities appears to be in its support. In the case of Eggleston v. The State, 41 Ia. 574, it was held that where one, at the same time, and by the same act, passed to the teller of a bank four forged checks, that he had been guilty of but one offense, and that a conviction for uttering one of the checks was a bar to a conviction upon the others. A similar doctrine was held in the case of The State v. Benham, 7 Conn. 414, and in the case of The State v. Hennesy, 23 Ohio St. 339, and that has the approval of Mr. Bishop in his work on Criminal Procedure, Vol. 1, secs. 482, 483. And see, also, in this connection, Hinkle v. Commonwealth, 4 Dana, 518. It is true that in the case of Lindsey v. The State, 38 Ohio St. 507, it was held by the Supreme Court, in accordance with the well settled doctrine upon the subject, that a person who has forged a note in another state, and uttered it in this state by means of an innocent agent here, may be prosecuted here, although he was never in this state. But it is nowhere intimated in the case, that had the accused made as well as uttered the instrument within this state, he could be convicted and punished here as for the commission of two distinct offenses. -Whether the offense against the laws of the state where the original forgery was committed might not be punished there, is another and a different question. By a legal fiction, where a thief removes stolen property from the county in which the larceny was originally committed, the state may, at its election, prosecute the offender in either county, as for a larceny committed in that county; nevertheless, but one *536 offense has been committed, and there can be but one conviction. See, also, in this connection, Tabler v. State, 34 Ohio St. 127, 137; Breese v. State, 12 Ohio St. 146, 151 and 158.
Upon a careful consideration of the authorities our conclusion is, that it satisfactorily appears from the record, that in falsely making and fraudulently uttering the instrument set out in the indictment, the accused committed but one offense; that the “ making” and “ uttering” of the same instrument by the same party were, in contemplation of law, connected and consecutive parts of but one transaction, and became, and were so merged as to render the accused guilty of the crime of forgery, but not of having committed a double crime under the statute.
• It results that this double sentence, imposed as before stated, was without authority of law, and the judgment pronouncing such sentence must be reversed, and the cause remanded to the court of common pleas for judgment and sentence upon the verdict of the jury as for a single offense, pursuant to law.
• As to the practice in such cases, I call attention to the case of Williams v. The State 18 Ohio St. 47. The inquiry arises as to whether or not the sentence for the single term of five years under one of these counts might be permitted to stand, and the other reversed. A reflection upon that will clearly show that this court would not have the authority to make that kind of an order under the circumstances. The record shows, according to our judgment, that the defendant had committed one offense, which she may have committed in two ways. She' might, in a certain sense, be guilty under both counts of the indictment, but although she has been convicted .under both counts of the, indictment, she has simply been convicted of but one offense, and should be sentenced as for one offense only. Whether that should be for one or for the other, it is not proper for this court, and not proper for the court of common pleas to designate or to separate. It appears that she has been properly convicted of the crime of forgery, and should be sentenced to a term as for the one offense of forgery.
James H. Southard, prosecuting attorney, J. D. Ford, counsel for State.
Hon. Frank H. Hurd, and L. G. Richardson, contra.
For the reasons given, this sentence will be reversed and the cause remanded, as I have said, for a proper sentence upon the verdict, as for a single offense.
Note. — After the Circuit Court reversed the judgment and remanded the ease for a new sentence, the Court of Common Pleas sentenced the defendant for a term of nine and a half years, and that sentence was brought before the Circuit Court pro forma on petition in error, and that sentence was affirmed and the case taken to the Supreme Court, on motion for leave to file petition in error, which motion was overruled by the Supreme Court June 23, 1891.