# IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, HAWAIIAN ISLANDS.

## MAY TERM, 1897.

---

## REPUBLIC OF HAWAII *v.* JOHN RADIN.

### UNLAWFUL POSSESSION OF OPIUM.

SUBMITTED JANUARY 3, 1898.          DECIDED APRIL 14, 1898.

DECISION ON PLEA IN BAR, BY CIRCUIT JUDGE PERRY.

The defendant was charged in the District Court of Honolulu, on the 20th day of April, 1897, with "the unlawful possession of opium or preparation thereof in Honolulu, Island of Oahu, Hawaiian Islands, on, to-wit, April 6, 1897." To this charge a plea in bar was interposed which read as follows: "Now comes the defendant in the above entitled cause and says that he ought not to be required to plead to or answer the charge preferred against him herein for that he was, on the 13th day of April, 1897, in the District Court of Honolulu, duly tried and convicted of an offense identical in law and fact with that herein charged against him.

"Reference is hereby made to the record in the case entitled *Republic of Hawaii v. John Radin*, tried in this honorable court on the 13th day of April, 1897.

"Wherefore defendant asks the court here whether he shall or ought to plead or answer to the charge herein preferred against him, and prays that he hence be discharged without day."

The record in the former case referred to was put in evidence in support of the plea. The court below overruled the plea, the trial proceeded, and the defendant was convicted and sentenced.

From the ruling of the district magistrate the defendant appealed to this court on points of law which are stated in the certificate of appeal as follows: "1st. That the district magistrate, having found as a fact that the evidence offered by the prosecution in this case would have warranted a conviction in the previous case tried on April 13th, 1897, erred in overruling defendant's plea of former conviction.

"2d. That the conviction was contrary to law, the evidence and the weight of the evidence.

"3d. That the defendant, having been proved to be a public hack driver, and no direct evidence being adduced of his knowledge of the contents of the parcel containing the opium, the court erred in overruling defendant's motion to discharge."

Complete transcripts of the record in the first case (Criminal Division, No. 2389) as well as of the record in the case at bar, duly certified, were sent up with the appeal herein and as a part thereof. These records show that the defendant was, on the 13th of April, 1897, in the District Court of Honolulu, charged with "the unlawful possession of opium or preparation thereof in Honolulu, Island of Oahu, on April 6th, 1897," and that he was, on the same day, after trial, convicted and sentenced to pay a fine; that he appealed from said conviction and sentence to this court with a jury, and that such appeal was withdrawn on the 5th of May following, and the fine paid.

The transaction out of which these two prosecutions arose was this: on the 6th of April, 1897, at about 2:30 o'clock p. m., defendant was detected in the act of delivering from his hack a number of tins of opium, wrapped up as one package in bags, at or near the Oceanic wharf in this city. He was arrested and charged with the unlawful possession of opium, and soon after released upon furnishing bail. Shortly thereafter on the same afternoon, a search warrant was issued and under its authority

defendant's premises, situate on South street in this city, were searched with the result that another package of opium containing thirty tins was found therein under the bed of an employee of the defendant. For the possession of this opium defendant was again arrested, at about 4:30 p. m., and again released on bail.

No evidence was offered for the defense at either of the two trials. At the trial of the first case, the prosecution relied upon the possession by the defendant of the thirty tins of opium found on his premises, and no evidence was adduced with reference to the possession of the opium found in the hack at the wharf. At the trial of the second case, the opposite course was followed, the evidence being confined to the possession of the opium found in the hack.

The undisputed evidence shows that as a matter of fact all of the opium upon the possession of which the two prosecutions were based, was in the possession of the defendant at about one o'clock on the afternoon of the 6th of April in the room in which the thirty tins were afterwards found, and that it remained there until some time later when the defendant took a portion of it in his hack (leaving the remainder in the room until the search and second arrest were made) for the purpose of delivering it to some one on the steamer "J. A. Cummins" at the wharf. It was while attempting to make such delivery that the defendant was first arrested.

It is contended by the prosecution that the plea in bar is improperly before the court, because at the time it was interposed the defendant's appeal from the first conviction was still pending and because he might have been thereafter acquitted by a jury. To this the answer is that it is immaterial whether the appeal should finally end in an acquittal or in a conviction. In either event, if the proceedings are a bar at all, the verdict would bar the second prosecution. Moreover, the fact remains that the sentence in the first case has been satisfied and that the defendant has been punished for committing an offense, and if that offense is in reality the same offense for which the prosecu-

tion now seeks to punish him, the court must see to it that the constitutional provision which applies is not violated.

The article of the constitution relied upon by the defense in support of its plea provides that "no person shall be required to answer for any offense identical both in law and fact with an offense of which he has been duly convicted or of which he has been duly acquitted." This article is simply the enactment in perhaps a slightly modified form of a rule of law which is recognized in all civilized countries. The only question is whether the offense described in the charge in the second case is "identical both in law and in fact" with the offense of which defendant was convicted in the first case.

The statute under which the charge was entered in each of the two cases under consideration provides that "any person who shall have in his possession opium or a preparation thereof, which he shall not have received" in a certain legal manner specified, shall be punished. Thus it is the "having in possession"— a condition, not an act,—which is made an offense. For the prosecution it is contended that the record shows two separate and distinct offenses committed on the same day, that the opium in each case was a separate and distinct lot and that the possession proved was distinct in different localities and at different times. I cannot regard the matter in that light. In my opinion, the record discloses but one offense committed on that day. The opium was *all* in the possession of the defendant at the same time; the mere fact that at the moment when the first arrest was made, a part of the drug was in defendant's hack at the wharf and the remainder at his stables, does not make it two offenses or authorize the bringing of two separate prosecutions. Let us suppose that at the time of the first arrest the hack with the opium in it was at the stables instead of at the wharf, or that the two packages of opium were in different rooms of the same house, or in the same room, could it be successfully contended that in any one of these instances the facts constituted two separate and distinct offenses? I think not; and none of the supposed cases would be different in principle from the case at

bar. If offenses can be multiplied as contended in this case, it is difficult to see where the line can be drawn. A defendant having opium hidden in half a dozen different places on his premises at the same time could, under such a rule, be convicted and punished under six different charges provided six different searches were made. I do not think that offenses can thus be multiplied.

As to what are the tests to determine whether a plea of *autrefois* acquit or convict is good, the following authorities are in point:

"The true test by which the question whether such a plea is a sufficient bar in any particular case, may be tried, is, whether the evidence necessary to support the second indictment would have been sufficient to prove a legal conviction in the first."— *Price v. State*, 19 O., 424.

"Where the facts charged in the second indictment would, if true, have procured a conviction on the first, then the plea of autrefois acquit is well pleaded."—*Durham v. The People*, 5 Ill., 174.

"The authorities cited and the illustrations given in support of the rule, as stated, all show that, to make the plea a bar, proofs of the facts alleged in the second indictment must be sufficient in law to have warranted a conviction upon the first indictment of the same *offense* charged in the second, and not of a different *offense*. Archbold's Criminal Pleadings, 82, and cases there cited. Or, in other words,, the party must have been in peril of being convicted upon the first prosecution of the same offense described in the last. * * * To be a bar, the offense charged in the present prosecution must agree in law and in fact with some offense of which the defendant might have been convicted upon the former prosecution, and in such former prosecution there must have been an acquittal or conviction."— *Freeland v. The People*, 16 Ill. 362.

Applying these rules to this case, the plea must be held to be good. Proof of the facts alleged in the second charge would

necessarily have required a conviction upon the first charge of the same *offense* charged in the second. Evidence of the facts alleged in the second charge and testified to in support thereof, was clearly admissible at the trial of the first charge, and, whether with or without the evidence actually adduced at the first trial, would if true not only have warranted but required a conviction upon the first charge; in other words, the charge being general, the defendant was in peril of being convicted upon the first prosecution of the same offense described in the last. That the defendant had in his possession the opium found in the hack in addition to that found at the stables, is mere matter of aggravation which could have been proved in the first case to show the degree of defendant's guilt, and by reason of which, if proved, the sentence imposed upon him could have been properly increased in severity. It is like the case of an assault, where the defendant could have been proven to have dealt the prosecuting witness, as a part of one transaction, six blows but the evidence is confined to three of the blows, in which case it would not be permissible for the prosecution to bring another charge based upon the other three blows as a separate assault.

Counsel for the prosecution contends that if the plea in this case is held good, it would be equivalent to holding that, where A commits an assault upon B in the morning, is arrested and released on bail and immediately thereafter again assaults B, is again arrested and released on bail, and again assaults B, and so on, on the same day, a conviction or acquittal for the first assault would bar a prosecution for the subsequent assaults. That does not necessarily follow, for the case supposed by counsel differs materially from the case at bar in that the hypothetical case shows a series of distinct acts and offenses, each unconnected with the other and not a part of the same transaction, while the case at bar is entirely the opposite. How specific the charge would have to be in its averments in each of counsel's hypothetical cases, in order to be unassailable by pleas in bar, I need not now say. This decision is based, not upon matters of form

in the charge, but upon the view of the law that an offense such as that disclosed by the evidence in this case, is indivisible.

On the subject of indivisibility of offenses, the following citations are in point. "This court has held it as against the spirit of the rule to cut up or divide one transaction into separate offenses; as that    *    *    *    one acquitted on an indictment for horse stealing shall not be convicted on a separate indictment for stealing a wagon and harness, the evidence showing it to have been but one transaction, committed at the same time and place, and by taking from the same party."—*Reddy v. Com.* (Kentucky, 1895), 31 S. W. 731.

"The omission to include in the indictment other articles, stolen at the same time, and forming a part of a single offense, was for the defendant's benefit, if it had any bearing upon the case. It made the offense charged appear less aggravated than it really was, while the conviction or acquittal on the indictment as drawn, would bar another prosecution for the same larceny. The state cannot split up one crime and prosecute it in parts. A prosecution for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime." —*Jackson v. The State*, 14 Ind. 328 (1860).

"The severance of the subject matter in any form, and prosecuting for part, followed by a trial on the merits, equally bars the whole."—2 G. & W., on New Trials, p. 55.

In New York, a statute was in force, in 1860, which read, in part: "Every person who shall have in his possession any forged, altered or counterfeit negotiable note, bill,    *    *    * with intention to utter the same as true or as false,    *    *    * with intent to injure or defraud, shall, upon conviction, be subject to punishment    *    *    *." In ruling upon a plea in bar interposed to a second charge brought under that statute, the court said: "The defendant had in his possession at one time several bank notes or bills of different banks, which were taken from him at the same time. He has been tried for having one of them in his possession and acquitted, and the question arises

whether he can again be tried for possessing each of the other notes of the different banks which he had at that time. Is the possession of each bill or note, holden at one and the same time, a distinct offense, and punishable as a distinct crime ? I cannot perceive how they could be deemed distinct offenses.  *  *  * The act of possessing several notes, found in the defendant's possession at the time of his arrest, must be considered as one and the same offense, as much as the act of stealing a number of articles at the same time and place."—*People v. Van Keuren,* 5 Parker's Crim. R., 76.

In *State v. Cameron,* 40 Vt. 559, a motion in arrest was made upon the ground that two distinct offenses were joined in one count. In disposing of the objection the court said: "Now, in this case, does the count allege more than one offense ? The indictment charges but one taking on one day of several articles of property belonging to one man. It in fact charges but one larceny consisting of the felonious taking of three articles, namely, a horse, wagon and harness. If they had been taken at different times, they would have been several larcenies, and might have been the subject of different indictments. Taken at one time, they constitute but one theft, and cannot be the subject of different indictments."

In *Walter v. Com.,* 88 Pa. St. 137, the plaintiff in error, who was the proprietor of a saloon, was indicted and convicted of a violation of a certain Act which prohibited all persons from "employing or permitting the employment of any female at such saloon, to sell, vend,  *  *  *  any intoxicating drinks  *  * *  to any person or persons." Plaintiff in error employed on the same day eight females in the saloon. The opinion of the court was in part as follows: "It was also urged that there was a misjoinder; that there should have been a separate indictment or at least a separate count, for the employment of each of the said females. If there were separate offenses this would be so. It needs, however, but a moment's reflection to see that but a single offense was committed. That offense was the employment, and it was one act  *  *  *.  It is wholly immaterial

how many she employed, except for the single purpose of ascertaining the amount of the fine. For her offense on that day she cannot be twice tried and convicted. It cannot be split up into eight offenses, involving a corresponding number of indictments and trials. It might as well be said that if the Act of Assembly had prohibited the keeping of billiard tables in the saloon of the plaintiff in error, and imposed a fine for each table so kept, that she would have been liable for a separate indictment for each table. In such case the number of tables would have no significance, except in the matter of the penalty, just as in the case in hand the number of females employed guides the court in imposing the fine, but is valueless for other purposes. It may be that if upon a day subsequent to the indictment the plaintiff had taken another female into her employ for a like purpose, an indictment would lie for such subsequent act. But we have not that question before us."

In *State v. Berham*, 7 Conn. 416, the defendant was prosecuted under a statute similar in its provisions to the New York statute above cited. In the language of the court, "the prisoner had in his possession, at one time, several bank notes or bills of different banks, which were taken from him at one time. He has been tried for having one of them in his possession, and convicted; and the question now is, whether he can be again tried and convicted for possessing each of the other notes of the different banks, which he had at that time. In other words, is the possession of each bill or note, holden at one and the same time, a distinct offense, and punishable as a distinct crime ?   *   *   *
Here the substance of the offense is having in possession counterfeit bills or notes. The number may add to the evidence of guilt, but not to the number of the offences.   *   *   *   This information might have specified each note, which the prisoner had in his possession as was done in several cases cited in the *King v. Sutton*, Ca. tem. Hardw. 372. Had that been done, it would hardly be claimed that there could have been several punishments. The offense, then, is one and the same offense."

See also *Lorton v. State,* 7 Mo. 56; *State v. Egglesht,* 41 Ia. 578; Wharton's Evidence, Sec. 588.

So, too, in the case at bar, the charge might have specifically set forth the possession by the defendant of the two lots of opium found, and it would not have been bad for duplicity in stating two offenses, and it would hardly be claimed that there could have been two punishments.. The offense committed by the defendant was all one and the same offense.

In determining the question of the identity of the offenses, charged, I have examined and considered all of the evidence offered in support of the plea in bar as well as the whole record of the trial in the case at bar. That evidence is admissible in support of such a plea for the purpose of showing the identity of the offenses is well established. See the *Queen v. Poor,* 9 Haw. 298.

The plea in bar is sustained, the judgment below reversed and the defendant discharged.

*C. Creighton,* special counsel for the prosecution.

*Kinney & Ballou* and *A. G. M. Robertson* for the defendant.